Hull, J.
This action was brought below by the defendant in error to recover damages for personal injuries which he claims he sustained on account of the negligence of the plaintiff in error. *519 The defendant in error recovered a verdict for $750, upon which judgment was entered by the court of common pleas, and it is to reverse this judgment that this proceeding in error is brought.
The defendant in error, Green, was in the employ of the plaintiff in error, The Brown Oil Can-Company, which operated a shop or a manufactory in the city of Toledo. Green was employed in the operation of a machine which may be called a press, that was used in pressing tin into shape in the manfacture ■of dust-pan backs. His claim was that this machine was defective, and known to be defective by the Oil Can Company, and that he discovered that it' was defective, and notified the superintendent of the company; that the superintendent promised to repair it, and relying upon that promise, he, Green, continued in the employ of the company, and continued to operate the machine until he was injured, on the 13th day of February, 1900. The negligence of the company, he claims, consisted in permitting this machine to become and remain out of repair. He excuses himself for operating the machine on the ground that he had been promised that it would be repaired. The claim of the company is, first, that the machine was not defective; second, that if it was defective, that Green’s injuries were directly due to his own negligence in the manner in which lie was operating the machine.
The chief question here — the only question of any moment —is whether the verdict of the jury was sustained by sufficient evidence, or whether it was contrary to the weight of evidence, upon the question of Green’s contributory negligence. I should say, however, that the question as to whether the machine was defective is also one upon which the evidence was conflicting. The plaintiff in error claims that the evidence shows that the machine was not in any manner defective; the defendant in error claims that it was defective in that it had become “gummed up,” as it was called, that the oil had become thick and sticky, and the operation of a spring in the machine was thereby interfered with, so that the machine did not work properly; and in that respect the machine was defective, to the knowledge' of the defendant below.
*520 The press was a machine that consisted of a lower die with a. deep wide groove in it, and an upper die or plunger, as it is sometimes called, which, by the operation of the machine, was made to work up and down in the groove of the lower die. The machine was run by the power in the factory, which was-communicated to it by a belt on a large revolving wheel. The machine was thrown into gear so that the upper die or plunger would work up and down by placing the foot upon a treadle, and thrown out of gear by taking the foot off the- treadle. A square piece of tin was placed on the lower die, and the upper-die came down and pressed it into the groove and formed it into the shape necessary for the back of the dust-pan.
• Green was operating this machine and making dust-pan. backs when he was hurt. He was about to remove with his-thumb and first and second fingers of his left hand a dust-pan. back that had been pressed in the groove, when the shaft came-down and cut off or crushed the ends of those two fingers.
Green’s claim is that, on account of the defective condition of the machine, when his foot was taken off the treadle the machine would not be immediately thrown out of gear, either on account of the gummy or stick3 condition of the spring, or for some other reason, so that the shaft worked up and down sometimes once, and sometimes twice, and somtimes three times, after his foot was taken off the treadle; whereas, the taking of" the foot off the treadle ought immediately to stop the operation of the machine. On this occasion, the piece of tin having been-pressed, he claims he took his foot off the treadle, put his fingers on the tin to remove it from the groove, and without his foot being on the treadle, the shaft again came down, and he was injured as stated.
Of course Green knew that if this shaft came down on his fingers it would injure them. He knew that the machine, for some reason, was out of order. As he himself testifies, it had been out of order for some days, and in fact had been out of order as much as a month before; but his claim is that he had been promised that the machine would be repaired, and that he relied .upon that promise, and continued to work and operate it. He claims that he was working and operating it at the time he was hurt in the manner in which he had been instructed to operate it when he was employed by the company, to-wit: by taking- *521 the pressed tin out of the groove with his fingers, and with n© other instrument; and that therefore he was in the exercise of ordinary care at the time he sustained this injury. On the other hand, it is claimed by the plaintiff in error that Green-assumed this risk, whatever there was of it, with full knowledge of the condition of the machine, and further that he was guilty of contributory negligence so as to preclude his recovery.
To determine whether Green was guilty of contributory negligence, we must look briefly at the facts and circumstanced of the case: who Green was, what his experience was, and what his knowledge of machinery was, should be considered along’ with other facts; and his conduct upon the occasion in question" must be considered in the light of the knowledge that he had at that time of the condition of the machine, and in the light of the promise which he claims had been made to him that the machine would be repaired. Green was a somewhat experienced man with machinery. He had worked in a sawmill andl shops of various kinds before he entered the employ of ther Brown Oil Can Company, and he had been in their employ about a year before he was injured. He had worked with this kind of a press, and perhaps with this particular press, about six months, and had worked for some weeks at least on this particular kind of work, before he was injured. He was a man about 39 years of age. So that he was an experienced workman. He had full knowledge of the danger, if there was any, in the employment in which he was engaged. He claims that when he entered the employ of the company he was instructed by the foreman, Mr. Brown, to operate the machine as he was operating it at the time he was injured, by taking the pressed' tin out of the groove with his fingers; and that he never had any instructions to use any instrument. This Mr. Brown denies. According to the plaintiff’s testimony, it seems that this machine began to show signs of being out of repair about a month before Green was hurt, and he noticed then that it would “repeat,” as he calls it. After he took his foot off the treadle the shaft would go up and down two or three times without his foot being put back upon it'. And I think he called the attention of the foreman to it at that time. But he claim* *522 further that during the week immediately preceding his injury the machine was acting badly, and repeated, and on the Saturday preceding he called the foreman’s attention to it, and the foreman told him it was “gummy” and sticky, and that perhaps, if he would warm it up by running it rapidly, that the machine would work all right; and the foreman promised to look after -it and see that it was fixed. Green then went back to work and ■operated the machine, and returned Monday morning. Monday morning the machine again worked badly, and he ran it rapidly for a while, and warmed it up as he had been told. But the machine continued to repeat after that and did repeat several times during that day, the shaft coming down when his foot was not on the treadle. He came back to work again Tuesday morning, and as soon as he began to work the machine commenced to repeat He went to work at half past six and was injured at eight. According to Green’s testimony he spent nearly all of the time until within about half an hour of the time he was injured in undertaking to remedy this difficulty in the machine, warming it up, as he says. His experience on Monday, the day before, had shown him although the machine was “warmed up,” this did not remedy the defect, and that it was still liable to repeat, and the punch liable to come down in the groove without his foot being placed upon the treadle.
Of course Green knew that it was dangerous to put his fingers where this die might come down upon them, if the machine was out of repair, and the die liable to come down, although his foot was not on the treadle. He says in his testimony on page 65 of the bill of exceptions in answer to questions:
Q. You knew it to be a very dangerous thing to put yonr hands in there that way, didn’t you ? A. I did, sir.
Q. And yet you want the jury to understand that, knowing it to be dangerous to put your fingers in there, you didn’t know enough to shove them out partially with the other tin, so you wouldn’t have to put your fingers in? A. I wouldn’t say any other way; that is the way I supposed it was done.
And again on this same page:
Q. Did you ever think' of the dangers of it when you were ®n your way home or coming back, when you were away from the machine? A. Yes, sir: I knew there was danger there.
*523 But he says that fie had been promised. that the machine would be,repaired, and he says that he had been instructed by the foreman that this was the proper way to operate the machine, and that he was complying with these instructions. The evidence shows that the tin could be removed with some instrument aside from the fingers, and that these machines were operated by moving out a little the piece of tin that had been pressed, with the flat piece of tin. Just before the flat piece was put in its place on the lower die the operator could shove out the grooved piece of tin with the flat piece far enough so that it could be taken out without any danger. And the evidence shows that the machine was operated that way after the injury. As to whether or not that was done before the injury, the evidence is conflicting.] The foreman testifies that he told the plaintiff before the accident that he would not be injured if he took the flat piece of tin and used it to shove out the grooved piece, the flat piece of tin being put in with the right hand, and the. grooved piece being taken out with the left.
It is settled in this state by the case of Manufacturing Co. v. Morrissey, 40 Ohio St., 148, [48 Am. Dec., 669], that where an employe has been promised that a defective machine would be repaired, and continues to operate the machine after such promise for a reasonable length of time, relying upon such promise, that the fact of his continuing the operation of the machine is not in itself conclusive evidence of negligence, but it is a question to be submitted to the jury. The court say in the second paragraph of the syllabus:
“Held. That the workman’s knowledge of the defects in the machine was not, under the circumstances and as matter of law, conclusive of contributory negligence on his part; but it was a fact in the case to be taken into consideration by the jury, with all the other facts and circumstances, in determining the question, whether the workman’s own negligence contributed to the accident by which he was injured.”
The court say in the first paragraph of the opinion on page 150:
“There is no evidence that there was any carelessness on the part of Morrissey, the defendant in error, in his mode of operating the machine through whos^ defects he was injured. Oft *524 the morning of his injury — from the time of his commencing work up to and at the time he was injured — he ran the machine-much slower than usual, on account of its bad condition, and in order to avoid being hurt. The contributory negligence imputed to .him, consisted in his knowing that the part called the ‘jointer’ was out of repair, and could not be safely used, and in thereafter remaining in the service of the company and continuing to operate that portion of the machine.”
The evidence in the case showed that a short time before he was hurt Morrissey had called the attention of the foreman or superintendent to the defect, and half an hour before had been told to go on with his work and it would be fixed.
Although a promise to repair may have been made to Green, as he claims on Saturday preceding the Tuesday, on which he was hurt, if it should be found that that was not an unreasonable length of time, (which was a question left to the jury), still there remains in the case the question whether in the manner of the operation.of the machine at the time in its defective condition, Green himself was exercising ordinary care.
• A promise on the part of the employer to repair a defective-machine, known by the employer and employe to be defective, will not relieve the employe from exercising ordinary care in the operation of that machine, and he is required to exercise-such care as is commensurate with the danger of operating the machine. He is not permitted, because he has been promised that the machine will be repaired, to negligently and carelessly expose himself to danger which he might, by the exercise of ordinary care, avoid. In Manufacturing Co. v. Morrissey, supra, the supreme court say that there was no evidence that Morrissey was guilty of any negligence himself in the mode of operating the machine; and the evidence as set forth shows clearly that he was not. The supreme court has said in another case that where an employe in obedience to orders goes into a place that may be palpably dangerous, still, if he does this in obedience to orders, it may be a question for a jury to determine-whether he has exercised ordinary care or not.
'Did Green exercise ordinary care in the mode of operation of'this machine? He knew some weeks before the machine wás acting in this manner, for some reason. He knew that the- *525 shaft was liable to come down when his foot was not on the treadle; he knew that if his fingers .were in the groove when the shaft came down they would necessarily be cut off; he knew that on the preceding Saturday this machine had been acting in this manner — that for some reason it was not acting properly, and was repeating; and on the following Monday he found the machine in the same condition, and he undertook to repair.it, to remove the difficulty, but without success; and on the morning he was hurt, as he testifies, he spent an hour perhaps, in undertaking to remove this difficulty before he got this machine to work, so that it could be operated, and after he had been working it about half an hour, at about 8 o’clock, he was hurt. It is perfectly plain from this machine, parts of which are before us as a part of the bill of exceptions, and from the testimony of the witnesses, that the tin in the groove could be shoved out by the piece of tin that the operator was about to put in with his right hand. The groove is perfectly smooth, the edge of the grooved tin is turned over, so that there was a projection against which to place the piece of tin in the right hand; and it is clear that it was practicable and safe to operate the machine in this way. Although Green may have been instructed, as he testifies he was when he was put to work at the press to take the tin out with his fingers, that instruction was given to him with reference to a machine that was in repair, if such instruction was given. The foreman denies that he gave him any such instructions, but on the contrary testifies that he told him never to take the tin out with his fingers. He was not instructed to take the tin out with his fingers after the machine got out of repair — after it got into such a condition, as he claims, that the punch was liable at any time to come down on his fingers, without his foot being on the treadle. He knew and must have known with his knowledge of machinery, as a man would have known without any knowledge of machinery or its operation, that this piece of tin could be slid out with the other piece of tin, so that it might be taken hold of without danger. So that, resting the question upon Green’s testimony alone, it appears that with his knowledge of the condition of this machine, with the knowledge of what it was liable to do at any moment and of the injury that it would inflict upon him, with knowledge that he *526 might slide the tin out in some other way and avoid injury, he put his fingers under the punch for the purpose of taking out this piece of tin, and the punch came down without his foot being on the treadle, and he was injured, and it seems to us that upon that statement Of facts, viewing Green in the light of his own testimony, laying aside all the other testimony in the case, that he was clearly guilty of- contributory negligence, of negligence that directly contributed to his own injury. We are unable to avoid this conclusion from the statement that he makes himself. It is difficult for us to conceive of what would be contributory negligence if a man’s placing his hands voluntarily in such a position of peril as this was would not be. He was not in the position of a man who must continue to operate the machine at his peril or lose his employment. He could have operated the machine without putting his fingers under the plunger. He was not in the position of a man who had been ordered to do something that was dangerous and so obliged to encounter a peril in obeying the order. He was not in the position of Katie Reagan, in Breckenridge Co. v. Reagan, 22 Ohio C. C., 71. She was operating a machine when the plunger tripped. She was a girl only 15 years of age, and had never •worked in a factory before, and had only worked in this one two or three- days. She testified that she had been given very little instruction. The machine got out of order, and she testified that within half an hour (of her injury she had been told to continue her work and the foreman promised to repair the machine. She was undertaking to remove some pieces of tin witli her fingers, when the plunger came down, and she was injured. This case, as we view it, is very different in its facts and circumstances from Breckenridge Co. v. Reagan, supra, We do not base our judgment upon any conflict of evidence, or because the testimony offered by the defendant below is -more reasonable than that offered by the plaintiff below, but rest it upon the testimony of the plaintiff himself, and from that we conclude that he was guilty of contributory negligence, and that therefore the verdict was against the weight of the evidence, and that the motion for a new trial should have been granted, and that there was error in overruling it.
Doyle & Lewis,and C. A. Seiders, for Plaintiff in Error.
Hurd, Brumback & Thatcher, for Defendant in Error.
We have examined the charge of the court, but find no error's in it.. The case was properly submitted to the jury, and' had the jury followed the instructions of the court as given, the verdict would have been for the defendant below.
For these reasons the judgment of the court of common pleas will be reversed.